## SUPREME COURT—IN BANCO.

### JONA PIIKOI *et als. vs.* JONA KAPENA.

A BARE possession, without title, may enable the plaintiff to maintain his action, as against a mere stranger or wrong-doer, but is not sufficient as against the Government purchaser of the land, who has acquired that general property, which draws to it the possession.

Judge ROBERTSON delivered the decision of the Court, as follows :

This is an action of trespass, brought by the plaintiffs, for the purpose of trying the title to a piece of land in the Ili of Puiwa, Kaneohe. The plaintiffs claim the piece of land in question, as a part of a large tract, called " Kekele," leased by the King and Premier to Boaz Mahune and others, for a pasture land, on the 9th day of August, 1839, for the term of fifty-five years. The defendant claims it as being embraced within the surveyed boundaries of a part of the Ili of Puiwa, purchased by him from the Government, and granted to him by Royal Patent, on the 24th of December, 1849.

The lease to Boaz Mahune and others was not accompanied by any survey of the land demised, but its boundaries are described by natural marks, and by the names of surrounding lands. That part of the boundary where the present dispute has occurred, is defined as follows : " Mai Keloikeanuenue, holo pololei aku la a hiki i Puiwa, a malaila aku a hiki i Puuohala." This part of the boundary of the land held by plaintiffs is so indefinitely set forth in their lease, that its description may well consist with the claim of either the plaintiffs or the defendant, to the piece of land now in dispute. We must therefore look beyond this description, to the evidence adduced at the hearing in order to ascertain whether or not the disputed land was included in the lease to Mahune and others.

On the one hand, Keawe, who is a *kamaaina* of Kaneohe, testifies that a part of Puiwa lies within the boundaries of " Kekele;" and that the place in dispute was in the possession of the lessees of " Kekele," from the date of their lease up to the time that defendant purchased the remaining part of Puiwa. John Watson testifies that he has lived in the district of Koolaupoko since the year 1847; that in that year Piikoi sub-leased two hundred acres of the land held by the plaintiffs to Mr. W. H. Stevens, including the piece of kula land now in dispute ; and that he understood the boundaries of plaintiffs as extending down to, and even including a part of, the kalo land of Puiwa. Kealo testifies that he has lived on " Kekele " since the time it was leased to Mahune and others ; that from the year 1850 to the middle of 1855, he was Luna of the land for the lessees ; and that Kekuku, who had charge of Puiwa for the King, previous to the date of defendant's purchase, never cultivated any part of the dry land. Kahooilimoku, the present Luna of the lessees of " Kekele," testifies that the boundary between the parties runs along the edge of the kalo land; but his acquaintance with the locality appears to be of so recent a date, that we do not consider his testimony of any weight on the subject of boundary.

On the other side we have the testimony, first, of Mr. S. P. Kalama, who testifies that he made the survey of the land now owned by defendant, for the Government, in the year 1849 ; that before making the survey, he was ordered by the Minister

of the Interior to examine the boundaries carefully, with a view to avoid any encroachment on the land of the plaintiffs ; that on going to the spot for that purpose, the boundary where the present dispute occurs was pointed out to him by Kekuku, the Luna of Puiwa under the Government,, and by D. Kawana, late District Justice of Koolaupoko, and at that time Konohiki of one of the lands adjoining Puiwa; and that he made the survey accordingly. Kahina testifies that he was born and brought up on Puiwa, which land, he says, his father held under Kamehameha I ; that since 1839 he has lived alternately at Kaneohe and at Honolulu ; that Kekuku was his brother-in-law, and he knows that Kekuku cultivated the same piece of land which is now in dispute, when he was Luna of Puiwa ; and that the boundary on that side of the plaintiffs' land was described to him by Nahinu, one of the original lessees, as commencing at Keloikeanuenue, and running thence to Puiwa Kawa, and from thence on to Puuohala by a path, or road, which passed over the kula land near the brow of the pali, in a direction which, as pointed out by the witness on the plan, left the piece of land in dispute outside of the plaintiffs' line.

After mature consideration of the testimony, and of the means of knowledge and information enjoyed by the respective witnesses, we are of opinion that the weight of evidence preponderates largely in favor of the defendant, and that the plaintiffs have failed to prove that the piece of land in dispute, where their cattle have been taken *damage-feasant*, by defendant's agent, is included within the boundaries of " Kekele." The fact that the boundary as described to Kahina previous to 1848, by Nahinu, himself one of the original lessees, coincides so exactly with the boundary pointed out to the Government Surveyor in 1849, by Kekuku and Kawana, far outweighs any testimony adduced to the contrary.

We understood it to be contended on behalf of the plaintiffs that they have proved a continuous possession, for fifteen years, which, it is argued, is sufficient to gain them a title by occupation. The evidence of continuous possession, however, is contradicted by the testimony of Kahina as to the cultivation of the place in dispute by his brother-in-law. But, granting that the plaintiffs did hold possession for fifteen years, it would seem

to be a novelty for them to claim that they had acquired an estate for a *term of years*, by long occupation. And we presume this is all they do claim, for, if they claim the land in fee simple, they must produce either a Land Commission Award, or a Royal Grant, as a foundation for their title.

It is further contended on behalf of the plaintiffs that, even if the land in dispute was not included in their lease, yet, if they were in possession of it at the time the defendant entered on it and commenced cultivation, his entry was a trespass, and their possession was sufficient to enable them to maintain their action. We think this is unsound, for, although such bare possession might enable the plaintiffs to maintain their action, as against a mere stranger or wrong-doer, it could not be sufficient to sustain their action as against the defendant in this case, he having purchased the land from the Government, and acquired that general property which draws to it the possession, in the absence of any intervening adverse right of enjoyment. If the plaintiffs took possession without the consent of the owner, that owner had a right to resume possession at pleasure, and the right of the owner passed to the defendant by virtue of his purchase.

Let judgment be entered for the defendant, with costs.

J. W. Marsh, Esq., for plaintiffs.

R. G. Davis, Esq., for defendant.